**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KEVIN TODD HARDIN** | § | |
| | § | |
| **V.** | § | **A-17-CA-0615-LY** |
| | § | |
| **LORIE DAVIS** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates.

Petitioner Kevin Todd Hardin is pro se and has paid the full filing fee in this matter. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Docket Entry "DE" 1), Respondent's Answer (DE 9), and Petitioner's Reply (DE 11). For the reasons set forth below, the undersigned recommends that the Application for Writ of Habeas Corpus be **denied**.

**BACKGROUND**

Respondent has custody of Hardin pursuant to a judgment and sentence imposed by the 424th District Court of Burnet County, Texas. A jury found Hardin guilty of evading arrest with a vehicle, and concluded Hardin had two prior felony convictions. The jury assessed punishment at a term of 99 years' imprisonment. In his habeas action Hardin alleges he was subjected to trial court error and prosecutorial misconduct, and that he was denied his right to the effective assistance of trial and appellate counsel.

## STATEMENT OF THE CASE

A.  **Factual Background**

The following facts are taken from the State's brief in Hardin's appeal:

> On April 23, 2013, Granite Shoals Police Officer John Ortiz was on routine patrol when he observed Appellant driving on South Phillips Ranch Road at 4:00 a.m. traveling at a high rate of speed in a 30 m.p.h. zone. RR Vol. 3 Pages 15-17. Officer Ortiz was able to catch up to Appellant sufficiently to record Appellant's speed to be 51 m.p.h. RR Vol. 3 Pages 17-18. Officer Ortiz activated his blue and red lights to effect a traffic stop of Appellant for speeding. RR Vol. 3 Page l8. Instead of stopping Appellant accelerated to speeds beyond 60 m.p.h. and made attempts to flee from Officer Ortiz. RR Vol. 3 Pages 18-22. On two occasions during the chase Officer Ortiz was able to see the driver of the vehicle such that he was able to recognize that the driver was Appellant. RR Vol. 3 Pages 19-20. Appellant's vehicle eventually became stuck at which time Appellant abandoned his vehicle and fled on foot. RR Vol. 3 Page 22. Officer Ortiz was able to locate and detain Appellant at a carport about 150 yards from his abandoned vehicle. Vol. 3 Page 22.

(DE 10-10 at 9-10).

B.  **State Court Proceedings**

A grand jury returned an indictment on August 6, 2013, charging Hardin with one count of using a vehicle to flee from a peace officer to avoid arrest. (DE 10-4 at 4).[1] The indictment further alleged Hardin had two prior felony convictions for burglary of a habitation. (DE 10-4 at 4-5). Hardin was appointed counsel to represent him in his criminal proceedings. (DE 10-4 at 11).

At Hardin's trial the State presented the testimony of Officer Ortiz and a "dash cam" video of the pursuit of Hardin and his arrest. (DE 10-7 at 15-22). The State rested after the presentation of this evidence. (DE 10-7 at 44). Hardin did not testify or present any evidence in his defense. *Id.* Defense counsel argued to the jury that there was insufficient evidence to identify Hardin as the driver of the fleeing vehicle. (DE 10-7 at 54-56 ). The jury deliberated for approximately two and

---

[1] The state court record in this matter is lodged at CM/ECF Docket Entry 10.

a half hours. (DE 10-4 at 62). During deliberations the jury asked to review the dash cam video, which they were permitted to do. (DE 10-7 at 60). The jury also requested the police reports of the incident, which was denied because the reports had not been admitted as evidence. *Id.* The jury also requested a transcript of Officer Ortiz' testimony. This request was denied:

> THE COURT: . . . [this is the ] third note from the jury. . . . The question is "Can I get a copy of the officer's testimony?" My response is "No". Everybody [content] with that response? The State?
>
> MR. CROWTHER: My feeling is you probably should tell the jury that you outlined the procedure for getting that earlier.
>
> THE COURT: If they didn't listen I'm not telling them again. That's my response to that. Defense have an objection?
>
> MR. WATSON: No, Your Honor.

(DE 10-7 at 61). The jury then returned a verdict of guilty as charged. (DE 10-7 at 62).

Hardin elected to have the jury assess his punishment. (DE 10-6 at 23). He pleaded not true to the indictment's enhancement allegations. (DE 10-8 at 7-8). During the sentencing phase, in addition to providing evidence of Hardin's convictions on two charges of burglary of a habitation, the State presented certified proof of three other convictions—a misdemeanor failure to identify and two state jail felony theft convictions. (DE 10-8 at 14-17; DE 10-9 at 14-37). Hardin presented two character witnesses at the sentencing phase of his proceedings, who testified as to his good character. (DE 10-8 at 21-27, 33-38). Hardin's counsel, without objection, urged the jury to ignore the evidence as to one of the enhancement allegations and to assess punishment at less than 25 years to life. (DE 10-8 at 55-56).

During argument on sentencing, the prosecutor made reference to the parole language contained in the charge to the jury. (DE 10-7 at 49-5, 59). The following colloquy resulted:

3

> [State:] Now, of some interest in this is this offense is a quarter-time offense, which means that when your actual time served—
>
> [Defense:] Objection, Your Honor. He's going into parole.
>
> [The Court:] He's just arguing what the instructions say, Mr. Watson, I think.
>
> [State:] Yes. It's a quarter-time offense, which means—and I'm just using 40 because it make its [sic] really easy for me to do the math. If you sentence him for forty—
>
> [Defense:] I'll just object that it's not proper. It's in the instruction. The jury just doesn't need—they can read the instructions themselves. They don't need him talking about it. We just believe it's an improper closing argument.
>
> [The Court:] I'll overrule your objection.

*Hardin v. State*, 2015 WL 1514483, at *1 (Tex. App.–Austin 2015, pet. ref'd). After deliberations, the jury found both enhancement allegations to be true and assessed punishment at a term of 99 years' imprisonment. (DE 10-4 at 56).

Hardin was appointed appellate counsel, who filed a motion for a new trial. (DE 10-4 at 60-61). The motion for a new trial was denied by operation of law. Hardin then appealed his conviction and sentence. Hardin asserted the trial court erred by overruling his objections to the prosecutor's comments during closing argument. *Hardin*, 2015 WL 1514483, at *1. The Texas Court of Appeals denied relief, finding some of the prosecutor's comments improper, but finding the error harmless. *Id.* at *2-*3. The Texas Court of Criminal Appeals denied a petition for discretionary review.

Hardin filed an application for a state writ of habeas corpus, asserting he was denied the effective assistance of trial and appellate counsel. (DE 10-22 at 12-13, 16). Hardin asserted his appellate counsel was ineffective because he failed to file a substantive motion for a new trial and failed to confer with trial counsel regarding a motion for a new trial. (DE 10-22 at 16). Hardin further asserted trial court error, raising the same claim denied in his appeal. (DE 10-22 at 14).

Hardin also argued the trial court erred by failing to re-instruct the jury as to how to obtain a witness' testimony during deliberations. (DE 10-22 at 15). Hardin further alleged prosecutorial misconduct, arguing the prosecutor improperly bolstered the credibility of Officer Ortiz and that the prosecutor's comments regarding parole were improper. (DE 10-22 at 18).

The state trial court ordered Hardin's trial counsel to provide an affidavit responding to Hardin's claims of ineffective assistance of counsel. (DE 10-22 at 45). Trial counsel provided the requested affidavit, (DE 10-22 at 46-47), which stated in part:

> My actions in Mr. Hardin's case were appropriate. Our office had hoped that we might have some jury nullification in this case as the officers had kicked him until he urinated on himself. However, the facts were not good. One of the videos from the police car clearly showed Hardin evading from the police car, even going into a children's playground. Hardin's face was viewed in that video as he passed the police car with his window down. The Burnet County Public Defender's Office gave him as good of a trial as possible with the facts of his case.

(DE 10-22 at 49). The state habeas trial court found Hardin's claims unfounded, concluding:

1. As to Applicant's allegations regarding ineffective assistance of trial counsel: The Court finds each of the allegations to be UNFOUNDED.

2. As to Applicant's allegations regarding error by the Court concerning parole law: The Court finds these allegations to be UNFOUNDED and further finds that these issues were raised on direct appeal and denied by the Appellate Court.

3. As to Applicant's allegations regarding ineffective assistance of appellate counsel: The Court finds each of the allegations to be UNFOUNDED and further finds that the complaint did not allege specific details to compel an affidavit from Appellate Counsel.

4. As to Applicant's allegations regarding prosecutorial misconduct: The Court finds that allegation to be UNFOUNDED and further finds that this complaint should have been [raised on] direct appeal.

5. The Court finds that the Application, taken as a whole, is UNFOUNDED.

(DE 10-22 at 51).

The state habeas trial court recommended the application for a state writ of habeas corpus be denied. *Id.* The Texas Court of Criminal Appeals denied the application for state habeas relief without written order on the findings of the trial court. (DE 10-21).

**C.     Hardin's Federal Habeas Claims**

Hardin alleges that he is entitled to habeas relief because: (1) he was denied the effective assistance of counsel; (2) the trial court erred by allowing the prosecutor to ask the jury to consider the effect of parole law on his sentence; (3) appellate counsel rendered ineffective assistance by failing to confer with trial counsel and pursue a hearing on the motion for a new trial; and (4) the prosecutor committed misconduct by improperly bolstering the State's witness and by arguing parole law at sentencing.

Respondent admits that the petition is timely and not successive and that Hardin's claims were exhausted in the state courts. (DE 9 at 5). Respondent argues that Hardin's prosecutorial misconduct claim is procedurally barred and that his other claims are without merit. *Id.*

## ANALYSIS

**A.     The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act ("AEDPA") in *Harrington v. Richter*, 562 U.S. 86, 97-100 (2011). Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an

unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100, *citing Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Under the unreasonable application clause of § 2254(d), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (quotation marks and citation omitted). A reviewing federal court presumes the state court's factual findings are sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Maldonado v. Thaler*, 625 F.3d 229, 236 (5th Cir. 2010). This presumption extends to both express findings of fact and to implicit findings of fact by the state court. *Register v. Thaler*, 681 F.3d 623, 629 (5th Cir. 2012).

**B.     Merits**

    **1.     Ineffective assistance of trial counsel**

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the

7

> defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. A habeas petitioner has the burden to prove both prongs of the *Strickland* test. *Rogers v. Quarterman*, 555 F.3d 483, 489 (5th Cir. 2009); *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008). When deciding whether counsel's performance was deficient, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 at 688-89. Federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable unless clearly proven otherwise. *Id.* at 689. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011).

Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006). Trial counsel's failure to object does not constitute deficient representation unless a sound basis exists for objection. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). If a state appellate court found a claim based on state law without merit, counsel's failure to assert the claim cannot be found prejudicial. *Garza v. Stephens*, 738 F.3d 669, 677 (5th Cir. 2013). Additionally, given the weight of the evidence against Hardin, he has not established that any of the alleged errors were prejudicial. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (same).

### a. Failure to investigate

Hardin contends counsel did not adequately investigate his case. One of Hardin's two counsel filed a sworn affidavit in his state habeas action. (DE 10-22 at 46-49). In the affidavit counsel details her investigative efforts, including retaining a private investigator and reviewing discovery with him. (DE 10-22 at 46-47). The state trial court considered the affidavit in denying relief on this claim, and impliedly found counsel's statements credible. (DE 10-22 at 51). The state habeas court's factual determinations, including credibility findings, are entitled to a presumption of correctness. *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013); *Richards v. Quarterman*, 566 F.3d 553, 563-64 (5th Cir. 2009). Because Hardin has not rebutted the state court's implied finding of fact that counsel adequately investigated his case with clear and convincing evidence, he has failed to establish the factual predicate for this claim.

Additionally, a review of the record in this matter reveals counsel had a thorough command of the facts and law relevant to Hardin's case, and that counsel had developed a reasonable trial strategy given the weight of the evidence against Hardin. Hardin has not met his burden of establishing his counsel's performance was deficient or prejudicial and, accordingly, the state court's decision denying relief on this claim was not contrary to or an unreasonable application of *Strickland*.

### b. Private investigator

Hardin contends counsel should have requested funds for a private investigator. On this point, Hardin's counsel states in her affidavit:

> I had been in constant communication with Scott Green, my investigator in the case. On March 27, 2014, I requested that Scott contact Jerry Kovar and Randall Hardin to see if they would be available for character witnesses in the case. In addition, we

> issued a subpoena for personnel records for Jesus Canchola, one of the Granite Shoals officers on the case who we learned had been let go from the department. (A Motion to Quash was filed on these records by the state. That Motion to Quash was sustained by the trial judge as Mr. Canchola was not being called as a witness in this case.) In Hardin's November 12, 2013 letter, he acknowledges that he spoke to Scott Green when Mr. Green went to the jail. Mr. Green had Hardin sign his waiver of arraignment and went over Hardin's story. The Burnet County Public Defender's Office did a thorough investigation into the Kevin Todd Hardin case prior to trial.
>
> In the second allegation, Hardin states that I failed to hire a private investigator. My investigator is Scott Green. Mr. Green is excellent at his job. There was no need to hire an outside private investigator for this case. Hardin acknowledges speaking to Scott Green in his November 12, 2013 letter to me. This allegation is completely unfounded.

(DE 10-22 at 47-48). Hardin makes only a conclusory allegation that he was prejudiced because counsel used Mr. Green's services as an investigator rather than hiring a different investigator. "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).

### c. Failure to meet with Hardin

Hardin also contends that his attorneys did not meet with him adequately. On this point, the affidavit states:

> Hardin states that I only visited with him one time. That is incorrect. The Burnet County Public Defender's Office visited with Hardin on several occasions and maintained contact with him through free phone calls that are allowed for the Burnet County jail inmates to our office on one day of the week . . . Hardin called in to speak to us most every week during his incarceration. We provided our first initial information letter to Hardin on May 9, 2013. Mr. Green went to see Hardin in October 2013. Hardin was with us in court on October 25, 2013. I went to see Hardin on December 12, 2013, March 11, 2014, March 28, 2014 and March 28, 2014 in the Burnet County jail. Hardin was with us in court on December 20, 2013. Trial began on March 31, 2014, and Hardin was with us in court for all motion hearings as well as all portions of the trial

(DE 10-22 at 48). The state trial court found counsel's statements credible. The state habeas court's factual determinations, including credibility findings, are entitled to a presumption of correctness. *Miller*, 714 F.3d at 903. Once again, Hardin fails to rebut these findings. Additionally, Hardin makes only conclusory allegations of any prejudice, which are insufficient to meet his burden.

### d. Plea offers

Hardin alleges counsel was ineffective because she did not convey all plea offers to him. Counsel averred in her affidavit:

> On December 20, 2013, I visited with Hardin in an interview room behind the courtroom. Hardin discussed the offer with me and told me his limits on an acceptable offer. Additionally, he provided me with his list of discrepancies in the discovery pack. Assistant District Attorney, Peter Keim, and I discussed the case, and I nagged Mr. Keim for a lower offer. Mr. Keim stated that he would go down to 20 TDC if Hardin accepted the offer that day - December 20, 2013. I relayed this lower offer to Hardin, who stated that he would take 7-10 TDC only. Hardin rejected 20 TDC.
>
> * * *
>
> I was accused of not conveying the offer to Hardin. This is not true. The initial offer of 25 TDC was conveyed to Hardin on December 12, 2013. On December 20, 2013, a lower offer of 20 TDC was conveyed that was good for that day only. Hardin countered with 7-10 TDC. The Burnet County District Attorney's Office rejected our counter offer. Trial was set on December 20, 2013 in court, and the offers officially expired on that date.
>
> After my meeting with Hardin on March 11, 2014, I emailed the Burnet County District Attorney's Office and countered with 10 TDC. Richard Crowther rejected my counter. On March 21, 2014, I again asked for a paragraph to be dropped and a lower offer. Richard Crowther declined to go lower on the plea bargain offer.

(DE 10-22 at 45, 48). The state trial court found counsel's statements credible and Hardin offers no rebuttal. This claim has no merit.

11

### e. Typographical error

Hardin argues counsel was ineffective because counsel filed a request for discovery containing a typographical error. Trial counsel addressed this claim in Hardin's state habeas action:

> In the fifth allegation, it is alleged that I used the wrong name in the first paragraph of the Defendant's Request for Notice of Extraneous Offenses. This is correct. There is a typo in the first sentence. . . . I apologize for the typo; however, the typo had no legal effect on the case.

(DE 10-22 at 46). With regard to the claim of no harm having been done by the typo, Hardin offers no proof to the contrary, making instead only a conclusory allegation that the type constituted unconstitutional ineffective assistance of counsel. The lack of any evidence of prejudice arising from this error dooms this claim.

### f. Bill of exception

Hardin contends trial counsel's performance was deficient because counsel did not request a bill of exception with regard to the prosecutor's invocation of parole during sentencing argument. Hardin raised this claim in his state habeas action, and in that action his trial counsel averred:

> [Co-counsel], who did argue during the closing argument, properly objected to the state's argument. His objection was overruled by the court. According to Rule 33.2, Texas Rules of Appellate Procedure, a bill of exception is needed regarding matters "that would not otherwise appear in the record". The bill of exception would be inappropriate in this case. The argument was on the record, as the Assistant District Attorney, had made the argument to the jury. Mr. Watson's objection was correct. A bill of exception at this point in the case would be incorrect.

(DE 10-22 at 49). The attorney is correct. No bill of exception was needed, and thus there was no deficient performance in not requesting one.

### g. Subpoena of witness

Hardin asserts trial counsel failed to subpoena one of the arresting officers, Officer Conchola, to testify at trial. The state court could properly rely on the affidavit of Hardin's counsel in his state habeas action when denying relief on this claim. The affidavit states:

> In addition, we issued a subpoena for personnel records for Jesus Canchola, one of the Granite Shoals officers on the case who we learned had been let go from the department. (A Motion to Quash was filed on these records by the state. That Motion to Quash was sustained by the trial judge as Mr. Canchola was not being called as a witness in this case.)

(DE 10-22 at 45). Habeas relief on claims of uncalled witnesses is generally unwarranted. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[The Fifth Circuit] has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."). To establish that they were prejudiced by counsel's failure to call a witness, a habeas petitioner must demonstrate "not only that the testimony would have been favorable, but also that the witness would have testified at trial." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002), *quoting Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Hardin makes only a conclusory allegation that this witness would have testified in his favor. But, other than his speculation, Hardin has not presented any evidence that the terminated officer would have testified favorably at his trial. Additionally, because this witness' purported assault of Hardin was recorded by the dash cam, there is little likelihood that this witness would have testified, as doing so would likely have incriminated him. Further, as trial counsel has noted, the jury saw the

beating on the dash cam. Accordingly, Hardin has not established any prejudice arising from this alleged error.

Because Hardin has not shown counsel's performance was deficient in this regard or any prejudice arising from the alleged deficiency, the state court's denial of this claim was not contrary to or an unreasonable application of *Strickland*.

### h. Jury instruction

Finally, Hardin argues his attorney should have objected to the trial court's refusal to re-instruct the jury on how to request Officer Ortiz's testimony. Hardin raised this claim in his state habeas action and it was rejected. The jury had been instructed as to how to have this testimony repeated, and it is presumed that the jury obeys its instructions and that the jury understands a judge's answer to its question. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("To presume otherwise would require reversal every time a jury inquires about a matter of constitutional significance, regardless of the judge's answer."). Moreover, Hardin fails to show how he was prejudiced by the lack of an objection. There is no indication in the record that, had counsel objected, the trial court would have re-instructed the jury. In fact, the prosecutor had just suggested that the trial judge remind the jury of the earlier instruction, and the trial judge rejected that suggestion. There is no reason to believe that an objection from defense counsel would have changed the judge's mind.

## 2. Trial court error

Hardin contends the trial court erred by allowing the prosecutor to ask the jury to consider the effect of parole law on his sentence, despite defense counsel's objection. To warrant relief, trial court error must do more than merely affect the verdict; it must render the trial as a whole fundamentally unfair. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984); *Nelson v. Estelle*,

642 F.2d 903, 907 (5th Cir. 1981). To demonstrate an error by the trial court rendered a trial fundamentally unfair requires showing there is a reasonable probability that the verdict would have been different had the trial been conducted properly. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). The Supreme Court has held that on federal habeas review of state court convictions, a federal harmless error standard applies. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). For trial court error to be harmful it must have "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637; *Shaw v. Collins*, 5 F.3d 128, 132 (5th Cir. 1993). Under this standard, a petitioner is not entitled to federal habeas relief based on trial error unless he can establish that the error resulted in actual prejudice. *Brecht*, 507 U.S. at 637.

The Texas Court of Appeals concluded that, although the prosecutor's comments were improper under state law, any error was harmless. The state appellate court determined: "Balancing these three factors, we conclude that the prosecutor's improper comments were harmless and did not affect Hardin's substantial rights. We therefore overrule Hardin's sole point of error." *Hardin*, 2015 WL 1514483, at *3-4. Hardin has not demonstrated that the appellate court's determination that the error was harmless was incorrect or contrary to or an unreasonable application of federal law. Accordingly, Hardin is not entitled to habeas relief on this claim.

### 3. Ineffective assistance of appellate counsel

Hardin asserts appellate counsel rendered ineffective assistance by failing to confer with trial counsel before his motion for a new trial expired by operation of law and by allowing the motion for a new trial to expire by operation of law. Hardin makes only a conclusory statement that he was prejudiced by appellate counsel's failure to consult with trial counsel and by appellate counsel's failure to pursue the motion for a new trial. He does not allege what meritorious claim might have

15

been presented in the motion for a new trial. Neither does Hardin state what information trial counsel could have provided to appellate counsel that would have resulted in a different outcome on the motion for a new trial. Because conclusory allegations are insufficient to support a claim of ineffective assistance of counsel, *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998), Hardin is not entitled to relief on this claim. Further, Hardin has failed to demonstrate he suffered any prejudice from the lack of a conference, a prerequisite to relief. *Smith v. Robbins*, 528 U.S. 259, 286 (2000).

    4.    **Prosecutorial misconduct**

Hardin makes allegations of prosecutorial misconduct, alleging the prosecutor committed misconduct by improperly bolstering the State's witness, Officer Ortiz, and by arguing parole law at sentencing.

On state habeas review, the habeas trial court found these claims procedurally barred because the prosecutorial misconduct claims could have been, but were not, raised on direct appeal. The Texas Court of Criminal Appeals adopted this finding in denying relief. The state court's application of the procedural bar precludes the Court's review of the merits of Hardin's prosecutorial misconduct claims. *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006); *Soria v. Johnson*, 207 F.3d 232, 249, n.23, 24 (5th Cir. 2000). The only exception to this requires a petitioner to show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In reply to the answer to his petition Hardin does not offer any argument regarding the procedural default of his claims, and makes no attempt to show cause

or prejudice. Therefore, the prosecutorial misconduct claims are procedurally barred and must be dismissed with prejudice.

## RECOMMENDATION

It is, therefore, **RECOMMENDED** that Hardin's Application for Writ of Habeas Corpus be **DENIED**.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal of the Hardin's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## **OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED this 8th day of December, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE